MEDINA SUPPLY COMPANY, INC., Appellee,

v.

CORRADO et al., Appellants.

[Cite as *Medina Supply Co. v. Corrado* (1996), 116 Ohio App.3d 847.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 70561.

Decided Dec. 23, 1996.

*Laribee & Hertrick* and *Paul J. Kray,* for appellee.

*David A. Corrado,* for appellants.

KARPINSKI, Judge.

Defendants, Kenneth Corrado and Northpoint Homes, Inc., appeal from the judgment of the trial court denying their motion to vacate the judgment entered in favor of plaintiff, Medina Supply Company, Inc. Plaintiff obtained judgment on a cognovit note signed by defendants. Defendants moved to vacate this judgment because the warrant-of-attorney provision on the cognovit note was not sufficiently highlighted on the note. The trial court denied this motion to vacate. For the reasons that follow, we affirm the judgment of the court below.

Defendant Kenneth Corrado is the president of Northpoint Homes, Inc. On April 22, 1994, Corrado, as president of Northpoint, signed an application for credit with Medina Supply. The credit agreement stated that even though the agreement was executed in a corporate capacity, each signer of the note personally guaranteed any payment to Medina Supply. After defendants' indebtedness grew, defendants executed a cognovit note, on November 7, 1994, in favor of Medina Supply. The note was signed by Kenneth Corrado individually and as president of Northpoint Homes. The note stated as follows:

"FOR VALUE RECEIVED, the undersigned, Kenneth Corrado, individually and Northpoint Homes, Inc. by Kenneth Corrado, its President, jointly and severally, promises to pay to the order of Medina Supply Co. the sum of Thirteen Thousand Seventy–Seven and 80/100 Dollars ($13,077.80), plus interest at the rate of ten percent (10%) per annum, to be paid on or before the 30th of each and every month, in accordance with attached payment scheduled marked 'Exhibit A.' "

Thereafter, on September 9, 1995, plaintiff filed a complaint on the note, alleging that $11,288.34 was still due on the note. On September 11, 1995, attorney Steve Gall, by virtue of the warrant-of-attorney provision contained in the cognovit note, filed an answer and confessed judgment on behalf of North-

point Homes and Kenneth Corrado. The trial court then entered judgment for plaintiff in the amount of $11,288.34, plus interest at the rate of ten percent per annum from December 31, 1994.

On November 22, 1995, defendants filed a motion for relief from judgment. The trial court denied this motion, and defendants timely appealed, raising three assignments of error. The first two assignments state as follows:

"I. The trial court erred as a matter of law by failing to grant defendants' motion for relief from cognovit judgment, since the court was without subject matter jurisdiction to enter judgment by confession upon a cognovit note.

"II. The trial court abused its discretion by failing to grant relief from a judgment by confession when the motion for relief was supported by an affidavit which alleged that defendants had a meritorious defense to present; that relief was available pursuant to Rule 60(B)(5); and that the motion was timely filed."

■ In order to prevail on a motion brought under Civ.R. 60(B), the movant must demonstrate the following: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds for relief are Civ.R. 60(B)(1), (2) or (3), not more than one year after the judgment, order, or proceeding was entered or taken. *GTE Automatic Elec. Inc. v. ARC Industries, Inc.* (1976), 47 Ohio St.2d 146, 1 O.O.3d 86, 351 N.E.2d 113, paragraph two of the syllabus. A motion for relief from judgment will be overruled if these three elements are not satisfied. *Rose Chevrolet, Inc. v. Adams* (1988), 36 Ohio St.3d 17, 520 N.E.2d 564. A trial court's decision to deny a Civ.R. 60(B) motion is reviewed under an abuse of discretion standard.

This court recently described a cognovit note as "a legal device by which the debtor consents in advance to the holder's obtaining a judgment without notice or hearing, and possibly even with the appearance, on the debtor's behalf, of an attorney designated by the holder. *D.H. Overmyer Co. v. Frick Co.* (1972) 405 U.S. 174, 92 S.Ct. 775, 31 L.Ed.2d 124, 61 O.O.2d 528. Often, judgment on a cognovit note is entered pursuant to a warrant of attorney. 'A warrant of attorney consented to by a debtor provides for a waiver of prejudgment notice and hearing.' *Fogg v. Friesner* (1988), 55 Ohio App.3d 139, 140, 562 N.E.2d 937, 939." *Dodick v. Dodick* (Jan. 25, 1996), Cuyahoga App. Nos. 67385 and 67388, unreported, at 4.

■ Because of the special circumstances of a cognovit note, courts have dispensed with the requirement of grounds for relief and allowed relief from judgment when only two of the three elements are satisfied. *Soc. Natl. Bank v. Val Halla Athletic Club & Recreation Ctr., Inc.* (1989), 63 Ohio App.3d 413, 418,

579 N.E.2d 234, 237–238. In other words, a movant who files for relief from a judgment taken upon a cognovit note need only establish (1) a meritorious defense and (2) that the motion was timely made. *Meyers v. McGuire* (1992), 80 Ohio App.3d 644, 646, 610 N.E.2d 542, 543–544; *Dodick, supra.*

▪ In the case at bar, defendants' motion was timely filed; however, defendants have not established the required meritorious defense. The gist of defendants' argument is that the trial court lacked jurisdiction to enter judgment on the cognovit note because the warrant-of-attorney provision in the note did not comply with R.C. 2323.13(D), which states as follows:

"A warrant of attorney to confess judgment contained in any promissory note, bond, security agreement, lease, contract, or other evidence of indebtedness executed on or after January 1, 1974, is invalid and the courts are without authority to render a judgment based upon such a warrant unless there appears on the instrument evidencing the indebtedness, directly above or below the space or spaces provided for the signature of the makers, or other person authorizing the confession, in such type size or distinctive marking that it appears more clearly and conspicuously than anything else on the document:

" 'Warning—By signing this paper you give up your right to notice and court trial. If you do not pay on time a court judgment may be taken against you without your prior knowledge and the powers of a court can be used to collect from you regardless of any claims you may have against the creditor whether for returned goods, faulty goods, failure on his part to comply with the agreement, or any other cause.' "

This statute thus gives explicit instructions as to what warning must be given on a cognovit note.

▪ In the case at bar, the note signed by defendants contained, word for word, the statutorily mandated warning contained in R.C. 2323.13(D). This warning appeared in all capital letters immediately above the signatures of defendants. Defendants argue that this warning is insufficient because it does not appear more clearly and conspicuously than anything else on the document. Specifically, defendants point to the fact that the title of the note, "NOTE," is in capitals and also underlined, whereas the warning is merely in capitals with no underlining. We find this argument to be specious. First, a four-letter title is an inadequate basis for comparison to a paragraph. An objective review of the cognovit note shows the warning prominently displayed immediately above the signatures. The document itself is only one page long. Most important, the warning is the only paragraph set off entirely in capital letters. Thus, in type, location, and proportion, the warning satisfies the law. The statute does not

require the warning be a flashing neon light. Accordingly, we find that the cognovit note complied with R.C. 2323.13.

Defendants also contend that the note was signed under duress because Medina Supply threatened to place mechanic's liens on homes built by Emeritus Homes if defendants did not sign the note. A threat to do what one is legally entitled to do does not constitute duress. *Maust v. Bank One Columbus, N.A.* (1992), 83 Ohio App.3d 103, 108, 614 N.E.2d 765, 768. Moreover, evidence that the person consulted an attorney before signing the document is one factor indicating that a party did not suffer duress. *Mack v. Thompson* (Aug. 31, 1994), Hamilton App. No. C–930359, unreported, at 4, 1994 WL 466505.

For both of these reasons, defendants in the case at bar fail to establish duress. Defendants do not refute Medina Supply's contention that it provided materials to Emeritus Homes and thus had a legal right to place liens on those homes. It was not duress, therefore, for Medina Supply to forbear filing the lien in order to procure defendants' signatures on the cognovit note.

Additionally, when the note was signed, Kenneth Corrado was represented by counsel, as is evidenced by the following letter his attorney, David Corrado, sent to counsel for plaintiff.[1]

"Please find enclosed the original signature Note which was executed by Ken Corrado in my office on November 7, 1994. As we discussed and as per your letter of November 7, 1994, it was agreed that no execution will take place on any default on the Note until after I have been contacted and advised of the default. Additionally, as we agreed, the amount of the Note, $13,077.80, is the full amount due and owing Medina Supply Co. by Northpoint Homes, Inc. and/or Kenneth Corrado and full payment on the Note will fully satisfy any and all amounts owed by Northpoint Homes, Inc. and/or Kenneth Corrado from any and all liability owing to Medina Supply Co."

Accordingly, defendants have not presented sufficient operative facts to support a defense of duress.

Finally, defendants argue that Kenneth Corrado cannot be held liable because he received no consideration. This argument, like the others, fails. In the original agreement which extended credit to Northpoint Homes and which Kenneth Corrado signed, each signatory assumed responsibility to pay Medina Supply. This original agreement contained the following provision:

---

1. The distinction in this letter between Northpoint Homes, Inc. and Kenneth Corrado further reaffirms that Kenneth Corrado agreed to be additionally responsible for the debt.

"The undersigned further agrees that notwithstanding the fact that this application has been executed in a corporate or representative capacity, each signer hereof by such signature hereby assume responsibility for payment to medina supply co. and/or any of its subsidiaries or affiliated companies, of all amounts due pursuant to such extension of credit, according to the invoice amount and credit terms stated thereon, said personal and individual responsibility being given in consideration of the extension of credit by medina supply co. to the applicant, in the event of a default in payment of any sums due from the applicant to medina supply co. or any of its subsidiaries or affiliated companies, and notwithstanding the fact that this application has been executed in a corporate or representative capacity, each signer hereof by such signature hereby personally guarantees payment to medina supply co. or any of its subsidiaries or affiliated companies at medina, ohio all present and future balances of account due from the said applicant, and further the undersigned agrees to be responsible for any costs incurred in connection with any proceedings for the collection thereof, including reasonable attorney fees. applicant and any signer hereof notwithstanding the fact that this application has been executed in a corporate or representative capacity hereby agrees to pay the full amount of said purchases by the 10th of the month following delivery. purchases not paid by the 10th of the month following delivery are subject to a finance charge of one and one–half percent (1½% monthly) (18% annually) on the unpaid balance."

 In this credit agreement Kenneth Corrado guaranteed payment to Medina Supply in exchange for future extension of credit to Northpoint Homes. This extension of credit provides sufficient consideration to support the agreement and the subsequent note between plaintiff and Northpoint. *Barclays American/Commercial, Inc. v. ROYP Marketing Group, Inc.* (1988), 61 Ohio App.3d 701, 706, 573 N.E.2d 1115, 1118–1119. Generally, consideration which supports the underlying agreement is sufficient to bind the guarantor. " 'The consideration running from the creditor to the debtor is deemed sufficient to support the surety's promise to make the debt good.' " *Solon Family Physicians, Inc. v. Buckles* (1994), 96 Ohio App.3d 460, 464, 645 N.E.2d 150, 152, quoting *United States v. Tilleraas* (C.A.6, 1983), 709 F.2d 1088, 1091. "The obligation of the surety rests upon a consideration as adequate as that of the principal; for, though he receive no pecuniary or other benefit for his undertaking, credit is extended to the principal, and advantages are obtained by him, upon the faith of the surety's engagement." *Neininger v. State* (1893), 50 Ohio St. 394, 400–401, 34 N.E. 633, 635. This proposition has been the law of this state for over a century. Accordingly, because Kenneth Corrado signed the original credit agreement to be responsible personally for the indebtedness of Northpoint Homes in exchange for the extension of future credit, the trial court did not abuse its discretion in finding that lack of consideration did not constitute a valid

defense to warrant relief from judgment. The first two assignments are overruled.

The third assignment states as follows:

"III. The trial court abused its discretion by denying defendants' motion for relief from judgment without a hearing."

A movant requesting relief from judgment is not automatically entitled to a hearing on that motion. *Adomeit v. Baltimore* (1974), 39 Ohio App.2d 97, 68 O.O.2d 251, 316 N.E.2d 469. "If the material submitted by the movant in support of its motion contains no operative facts or meager and limited facts and conclusions of law, it will not be an abuse of discretion for the trial court to refuse to grant a hearing and overrule the motion." *Id.* at 105, 316 N.E.2d at 476. As demonstrated above, defendants did not allege sufficient operative facts to constitute a meritorious defense. Therefore, the trial court did not abuse its discretion by denying the motion without a hearing.

*Judgment affirmed.*

PORTER, P.J., and STRAUSBAUGH, J., concur.

DEAN STRAUSBAUGH, J., retired, of the Tenth Appellate District, sitting by assignment.